UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LARRY S. NEAL, No. 00-B-1077

                        Petitioner,

                                                03-CV-0431E(Sc)
                                                **ORDER**

            V.


MICHAEL E. GIAMBRUNO, Superintendent
of Wyoming Correctional Facility,

                        Respondent.
_____

## **INTRODUCTION**

Petitioner Larry Neal ("Neal") filed a pro se petition (Docket
No. 1) seeking a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254.

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Following a jury trial in Supreme Court, Monroe County, Larry
Neal was found guilty of one count of Course of Sexual Conduct
Against a Child in the Second Degree (N.Y. Penal Law § 130.80(a))
and five counts of Endangering the Welfare of a Child (N.Y. Penal
Law § 260.10(1)).

This conviction stems from a series of incidents which
occurred inside Neal's residences on McEwen Road and later Stone
Road, both in the Town of Greece. Between June 15 and September 1,
1997, Neal repeatedly displayed a pornographic magazine and a
pornographic videotape to five children, three of which were girls

from the neighborhood, two were Neal's son and stepson, and all were less than eleven years of age. The three girls, Amanda Mosher, Emily Halloran, and Amanda Thompson, testified that Neal either directed the children to engage in simulated sexual intercourse or was present in the room when the children were engaged in simulated sexual intercourse. T. 329, 401-02, 404, 406, 500-01.[1] Amanda Mosher and Amanda Thompson also testified that Neal sexually abused them. T. 407, 502. Amanda Thompson testified that Neal said he would hurt the girls or make them walk home alone in the dark if they told any one about what happened inside Neal's house. T. 504.

During an evening when Crystal Erdin was babysitting Amanda Mosher and her sister Emily Halloran, a television program with nudity came on the TV. Erdin told the girls they could not watch it, and Emily Halloran said that she had "watched that before" at "Larry [Neal's] house." T. 297, 336. Erdin told her father what Emily Halloran said to her, and he contacted Emily Halloran and Amanda Mosher's mother who subsequently confronted the girls about what occurred at Neal's residences. T. 304, 470.

Neal did not testify at trial but the defense called nine-year-old Kyle Sheehan, his stepson. Kyle Sheehan testified that he, his younger brother Shawn Neal, and the three girls viewed Neal's pornographic magazine and videotape, though he testified

---

[1] Citations to "T.__" refer to the trial transcript.

that contrary to the three girls' contention that Neal showed them the pornographic magazine and video, the magazine was found by Emily Halloran while looking for "gummy worms" in Neal's closet and the tape was found by one of the two girls named Amanda. T. 596, 583. Kyle Sheehan also testified that he "had sex" with Emily Halloran with their clothes on inside of Neal's house, but Neal was sleeping or in another room in the house. T. 578, 580-83, 585-88. Additionally, Kyle Sheehan testified that Neal never sexually touched the three girls nor suggested they engage in sexual activity or remove their clothes in front of him. T. 587-90.

After two days of deliberation, on May 16, 2000, the jury convicted Neal of five misdemeanor counts of endangering the welfare of a child, pertaining to each of the five children, and one felony count of a course of sexual conduct against a child in the second degree, pertaining to Amanda Mosher. T. 730. The jury found Neal not guilty of Sodomy in the first degree and three counts of Sexual Abuse in the first degree. T. 729-30. Neal was sentenced as a second felony offender to an aggregate determinate sentence of four years and six months in state prison. Sentencing of May 16, 2000, at 4, 14.

Neal directly appealed the trial court's judgment to the Appellate Division of the Fourth Department ("Appellate Division"). His appeal alleged two issues: that the trial court improperly altered the mode of proceedings at trial because it failed to

consult defense counsel before replacing a sworn juror with an alternate juror; and that the lower court improperly restricted Neal's cross-examination of two complainants about a prior false complaint. See Brief For Appellant, Dec. 11, 2001, attached as Appendix D to Resp't's Answer in Opposition to Petitioner's Application for a Writ of Habeas Corpus. On May 3, 2002, the Appellate Division unanimously affirmed the judgment and conviction of the trial court, finding those issues were not preserved for review and "in any event are without merit." People v. Neal, 294 A.D.2d 869, 869 (2002). Neal's application to the Court of Appeals for leave to appeal was denied on July 30, 2002. See People v. Neal, 98 N.Y.2d 700 (2002). On October 15, 2002, Neal made a motion for a writ of error coram nobis alleging the following: his appellate counsel was ineffective for omitting significant issues when pursuing significantly weaker issues; trial court committed reversible error by denying trial counsel's motions for a mistrial because evidence was improperly admitted concerning alleged uncharged crimes; and that the trial court failed to dismiss count six of the indictment as it failed to conform to New York State requirements. See Defendant's Pro Se Memorandum of Law, Writ of Error Coram Nobis, Oct. 6, 2002, attached as Appendix M to Resp't's Answer in Opposition to Petitioner's Application for a Writ of Habeas Corpus. The Appellate Division denied Neal's motion on

December 12, 2002, and application to the Court of Appeals for leave to appeal was denied on February 21, 2003.

On June 3, 2003, Neal filed the instant federal habeas corpus petition pursuant to 28 U.S.C. § 2254, raising the following grounds for habeas relief: (1) Neal's rights at trial were violated when the trial court discharged a sworn juror without his consent; (2) Neal's right to present a defense and confront his accusers was violated by the trial court's limitation on the scope of his cross-examination; and (3) ineffective assistance of appellate counsel. (Docket No. 1). Respondent answered the petition, asserting that Neal's claims are without merit. Resp't's Answer to Petitioner's Application for a Writ of Habeas Corpus at 6 (Docket No. 8).

For the reasons set forth below, the petition is denied.

## DISCUSSION

### I.   Exhaustion Requirement

The writ of habeas corpus requires that petitioners "fairly presented" their claims to the state courts before the federal system can issue the writ. See Jimenez v. Walker, 458 F.3d 130, 148-49 (2d Cir. 2006); see also Coleman v. Thompson, 501 U.S. 722, 731 (1991) (noting the exhaustion requirement, codified at 28 U.S.C. § 2254(b)(1), is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights."). A federal district court does have the

discretion to deny a petition containing unexhausted claims. See 28 U.S.C. § 2254(b)(2).

"In developing and refining the 'fairly present[ed]' standard, the Supreme Court concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005). Neal has raised on direct appeal and his motion for a writ of error coram nobis the same or substantially similar claims as raised in this petition. His motions for leave to appeal to the New York Court of Appeals were both denied, exhausting his state remedies. Respondent "make[s] no claim that the petitioner has failed to exhaust state remedies as to his habeas corpus claims." Resp't Answer at 6 (Docket No. 8). Accordingly, this Court finds that Neal has exhausted his available state court remedies.

## II. In Custody Requirement

Section 2241(c)(1) of Title 28 of the United States Code provides that district courts may consider habeas petitions only from prisoners "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1). The statutory language is interpreted as requiring that the habeas petitioner be "in custody" under the conviction or sentence under attack at the time his petition is filed. See Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam) (citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)).

There is no question that Neal filled his petition for habeas relief while in custody. He was incarcerated on May 16, 2000 in the Wyoming Correctional Facility to an aggregate determinate sentence of four and a half years. The present petition was filed on May 27, 2003. Neal was released from state custody on September 27, 2004, at which time he expressed his desire to continue his petition for habeas relief. <u>See</u> Petitioner's Letter to the Court of Sept. 17, 2004. Neal satisfies the custody requirement because he was in prison "at the time the petition was filed, which is all the 'in custody' provision of 28 U.S.C. § 2254 requires." <u>Spencer v. Kemna</u>, 523 U.S. 1, 7 (1998).

A petition may be moot, however, when a habeas petitioner has been released from custody after filing a petition. The relevant inquiry becomes whether the case still presents a case or controversy under Article III, § 2 of the U.S. Constitution. <u>See</u> <u>Spencer</u>, 523 U.S. at 7. A habeas petition challenging a criminal conviction "is not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." <u>Perez v. Greiner</u>, 296 F.3d 123, 125 (2d Cir. 2002)(citing <u>Pollard v. United States</u>, 352 U.S. 354, 358 (1957)). Thus, when a term of imprisonment has expired, "some concrete and continuing injury other than the now-ended incarceration or parole - some collateral consequence of

the conviction - must exist if the suit is to be maintained." Spencer, 523 U.S. at 7.

Collateral consequences still exist from Neal's conviction after his release from state custody. Though he completed his sentence, Neal is still subject to registration under the Sex Offender Registration Act which is a concrete and continuing redressable injury such that the parties continue to have a "personal stake in the outcome." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-478 (1990). In addition, registration has been recognized as a collateral consequence sufficient to conclude that a case or controversy continues to exist. See Henry v. Lungren, 164 F.3d 1240, 1242 (9th Cir. 1999) ("the [sex] registration requirement is... a collateral consequence of conviction") (internal citations omitted); see, e.g., McMahon v. Hodges, 225 F.Supp. 2d 357, 364 (S.D.N.Y. 2002) (finding petition is not rendered moot by release because petitioner continues to experience "collateral consequences" from the conviction by being registered as a sex offender)(overruled on other grounds); Fowler v. Sacramento County Sheriff's Dept., 421 F.3d 1027, 1033 (9th Cir. 2005) (a petitioner subject to California's sex offender registration requirement after release from custody suffered from collateral consequences and the petition was not moot); but see Stevens v. Fabian, Slip Copy, 2009 WL 161216, *2 (D.Minn. 2009) ("registering as a sex offender is not a collateral consequence

satisfying the "in custody" requirement for habeas relief pursuant to 28 U.S.C. § 2254"). Because of the "presumption of collateral consequences which is applied to criminal convictions" and the nature of forced registration as a sex offender, Neal's petition for habeas relief is not mooted by his release from incarceration. <u>Spencer</u>, 523 U.S. at 8.

## III. Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(1), (2); <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 375-76 (2000); <u>Miranda v. Bennett</u>, 322 F.3d 171, 177-78 (2d Cir. 2003); <u>Boyette v. LeFevre</u>, 246 F.3d 76, 88 (2d Cir. 2001).

The federal habeas statute provides that courts shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

§ 2254(a). This means that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law." Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (citing 28 U.S.C. § 2254(a); see, e.g., Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Furthermore, the AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and] the applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Boyette, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotation marks omitted). The Second Circuit has provided additional guidance concerning a federal court's application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: (1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? (2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? (3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

Williams v. Artuz, 237 F.3d 147, 152 (2d Cir. 2001) (citing Francis S. v. Stone, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## IV. Merits of the Petition

### A. Ground One: Discharge of juror without defense's consent

In his petition for habeas relief as well as his appeal to the Appellate Division, Neal argued that the trial court committed

reversible error in dismissing a juror before conducting a thorough inquiry concerning the nature of the juror's illness and without Neal's consent in violation of N.Y. Criminal Procedure Law ("CPL") § 270.35. Neal alleged the trial court's error violated his "rights to be present at all proceedings in court and to be tried by a jury of his choice as expressed in the federal and state constitution." (Docket No. 1).

At approximately 10:00 AM on October 28, 1998, the second day of trial testimony, Juror Maldonado advised the court that he had contacted a doctor's office because of a problem he was having with his eye. T. 360-63. Neal's trial attorney asked the juror if the uncertainty concerning whether his eye condition was contagious would affect his ability to concentrate, to which Maldonado responded, "I have to keep my hands to myself and politely say hello or something like that. That's pretty much it." T. 362. Neal's defense counsel said, "Your preference, Judge." Id. The judge told juror Maldonado to make an appointment with a doctor. T. 363. After visiting his doctor during recess for lunch, Maldonado was diagnosed with "pink eye," a contagious eye disease, and presented a note from his doctor to the court. T. 464-65. The court excused Maldonado from his jury service, concluding that he was "not a good candidate for jury duty" because his eye disease was contagious, and that "some of the jurors indicated that they

did not want to serve with Mr. Maldonado." T. 464. Maldonado was replaced with an alternate juror. T. 465.

Federal courts will be procedurally defaulted from habeas review of a "question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment... whether the state law ground is substantive or procedural." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (describing the "adequate and independent state grounds" doctrine); see Harris v. Reed, 489 U.S. 255, 261 (1989). The bar on habeas review resulting from a procedural default applies even where the state court issues an alternative holding addressing a procedurally defaulted claim on the merits. See, e.g., Id. at 264 n.10; Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam). If the petitioner can "show both cause and prejudice, or a fundamental miscarriage of justice," however, federal court review may be allowed. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).

The decision of the state trial court to excuse a juror with a contagious eye disease diagnosed by a doctor  was a proper exercise of judicial discretion based on an state procedural rule independent of any federal question. CPL § 270.35 governs the standards applied when discharging a sworn juror and the authority to replace a discharged juror with an alternative. "The standard

for determining when to substitute an alternative juror for a sworn juror pursuant to CPL § 270.35 is a flexible one and the decision as to whether the juror is unable to continue serving is left to the trial court's broad discretion." See People v. Pittman, 151 A.D.2d 985 (4th Dept. 1989), *lv denied* 74 N.Y.2d 817 (1989). The court conducted a "reasonably thorough inquiry" before discharging the juror and replacing him with an alternative. CPL § 270.35[2][a]; see People v. Whyte, 255 A.D.2d 407, 407 (2d Dept. 1998) *lv denied* 92 N.Y.2d 1040 (1998); People v. Miranda, 223 A.D.2d 728, 729 (2d Dept. 1996), *lv denied* 88 N.Y.2d 882 (1996). The juror presented a note from his doctor to the court indicating he was not to return to work for three days and that he was "not a good candidate for jury duty." T. 464-65.

Furthermore, pursuant to his direct appeal the Appellate Division rejected Neal's claim of trial court error, finding it was not preserved for review and in any event without merit. Neal, 294 A.D.2d at 869. The Appellate Division cited a case that held a "defendant's failure to object to the juror's discharge means that there is no error of law preserved for our review." People v. Fox, 172 A.D.2d 218, 220 (4th Dept. 1991), *lv denied* 78 N.Y.2d 966 (1991). Because the Appellate Division "explicitly invoke[d] a state procedural bar as a separate basis for its decision," the failure to comply with the requirements of New York's contemporaneous objection rule as described at CPL § 470.05(2)

means the petitioner failed to properly preserve a claim for appellate review. Harris, 489 U.S. at 264 n.10. In the present case, the state appellate court relied on an "independent" rule separate from the federal question. A procedural bar is "adequate" if it is based on a rule that is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999)(quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)). New York's contemporaneous objection (CPL § 470.05(2)) is firmly established and regularly followed as established by relevant case law. See, e.g., Reyes v. Keane, 118 F.3d 136, 138 (2d Cir. 1997) ("A state prisoner who fails to object to a jury instruction in accordance with state procedural rules procedurally forfeits that argument on federal habeas review."). Therefore, this court finds the state law ground is both independent of the federal question and adequate to support the decision of the state court, and the petitioner has a procedural bar from habeas review on this claim.

A federal habeas petitioner may excuse a procedural default by showing cause for the default and prejudice, or by showing that a failure to consider the claim will result in a miscarriage of justice. A fundamental miscarriage of justice occurs when a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

Neal fails to meet the stringent requirements to show a miscarriage of justice, as "credible claims of actual innocence are 'extremely rare.'" <u>Doe v. Menefee</u>, 391 F.3d 147 (2d Cir. 2004). To establish actual innocence, a "petitioner must demonstrate that, 'in light of all the evidence... it is more likely than not that no reasonable juror would have convicted him.'" <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321-22 (1995)). Neal has not provided evidence sufficient to establish actual innocence and overcome the People's evidence at trial to the degree that no reasonable juror would have convicted him.

Neal likewise has not demonstrated "cause" that would excuse his failure to contemporaneously object to the discharge of a juror. The respondent, in his brief, claims that Neal "sets forth no reasons why he failed, in state court, to preserve his claim that the juror was improperly removed without petitioner's consent." <u>See</u> Resp't's Memo in Opposition to Petitioner's Application for a Writ of Habeas Corpus. This court agrees with the respondent's contention. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." <u>Murray</u>, 477 U.S. at 488. Neal does not allege any bar or impediment that prevented him from complying with New York's

contemporaneous objection rule. Neal does not allege ineffective assistance of <u>trial</u> counsel as a claim in his petition for a writ of habeas corpus or as an impediment from objecting to the discharge of a juror, but rather claims ineffective assistance of <u>appellate</u> counsel in his petition. Even if asserted, upon reviewing the record, Neal can make no showing that his trial counsel was "so ineffective as to violate the Federal Constitution." <u>Id.</u> I therefore find that Neal can not show cause for the procedural default nor the actual innocence standard required to prove a "fundamental miscarriage of justice." Accordingly, Neal's claim that the trial court erred in dismissing a juror is procedurally barred from federal habeas review and dismissed.

**B. Ground Two: Trial court's limitation on defendant's cross-examination of prosecution witnesses**

Both on direct appeal and in his petition for habeas relief, Neal claims that the trial court denied his constitutional rights to "present a defense and to confront his accusers." (Docket No. 1, at 8). Specifically, he alleges the trial court erred by denying him the opportunity to question Emily Halloran and Amanda Mosher on cross-examination concerning a prior report they made to the police regarding a missing neighborhood child.

At trial, Neal's defense counsel stated his intention to bring evidence of a prior report Emily Halloran made to police during his cross-examination of her. In the report, Emily Halloran

claimed that she saw a child in a red, rusty pickup truck that
resembled a missing neighborhood child, Caitlin.  T. 355-60.
Defense counsel claimed this report would suggest that Emily was a
"lead-able child, a suggestible child" which would speak to her
credibility, but the prosecution claimed the report had no
probative value, was irrelevant, and would confuse the jury.
T. 359-60.  It was unclear from the report whether Emily claimed to
actually identify the child she saw as Caitlin or if she claimed
she saw someone that resembled the missing child.  Caitlin was
later found, pursuant to a police and emergency personal search, in
her house where she had been hiding all evening.  (Docket No. 1, at
9).  The trial court denied the defense's request to use evidence
of the report in its cross-examination.  T.360.

The Appellate Division specifically addressed Neal's claim
when it unanimously affirmed his conviction on direct appeal,
finding the claim was "both unpreserved for... review and without
merit.  With respect to the complainant whom defense counsel sought
to cross-examine, [the Appellate Division] note[d] that 'the scope
of cross-examination of a witness concerning collateral matters
designed to impeach credibility is within the broad discretion of
the trial court.'"   Neal, 294 A.D.2d at 869 (citing People v.
Pritchett, 248 A.D.2d 967, 968 (4th Dept. 1998), *lv denied* 92
N.Y.2d 929 (1998)).   The Appellate Division also noted that
contrary to Petitioner's claim, only one of the girls (Emily

Halloran) was involved with the prior police report in question. <u>Neal</u>, 294 A.D.2d at 869.

The Supreme Court has recognized that while the right to present a defense is "one of the 'minimum essentials of a fair trial,'" <u>Rosario v. Kuhlman</u>, 839 F.2d 918, 924 (2d Cir. 1988) (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284, 294 (1973)), it is not unlimited.  Thus, the right to present a defense does not allow a criminal defendant to circumvent the rules of evidence.  Instead, a trial court may place restrictions on a defendant's presentation of evidence without offending the constitution, so long as those restrictions serve "legitimate interests in the criminal trial process... and are not 'arbitrary or disproportionate' to the purposes they are designed to serve." <u>United States v. Almonte</u>, 956 F.2d 27, 30 (2d Cir. 1992) (quoting <u>Rock v. Arkansas</u>, 483 U.S. 44, 55 (1987)).  In order to show an evidentiary error deprived the petitioner of due process, the petitioner must show the error was so pervasive that it denied him a fundamentally fair trial. <u>Collins v. Scully</u>, 755 F.2d 16, 18 (2d Cir. 1985) (citing <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976)).  Moreover, every limitation on a petitioner's right to cross-examine a witness does not present a federal constitutional violation.  <u>See</u>, <u>e.g.</u>, <u>Henry v. Speckard</u>, 22 F.3d 1209, 1219 (2d Cir. 1994), <i>cert. denied</i>, 513 U.S. 1029 (1994); <u>Harper v. Kelly</u>, 916 F.2d 54, 57 (2d Cir. 1990) ("All erroneous rulings that improperly restrict cross-examination

under state or federal rules of evidence do not necessarily implicate the Confrontation Clause.  Rather, the Constitution only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective, in whatever way, and to whatever extent, the defense might wish."), *cert. denied*, 499 U.S. 943 (1991) (quotations omitted, emphasis in original).

A state court's evidentiary rulings on the admission of certain testimony at trial generally do not present constitutional issues cognizable in a habeas corpus petition.  See Crane v. Kentucky, 476 U.S. 683, 689 (1986) ("[w]e... acknowledge our traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts"); see also Cummings v. Burge, 581 F.Supp. 2d 436, 451 (W.D.N.Y. 2008). "[F]ederal habeas corpus relief does not lie for errors of state law."  Estelle, 502 U.S. at 68; see also Grant v. Demskie, 75 F.Supp. 2d 201, 221 (S.D.N.Y. 1999) ("A habeas court is not an appeals court to review state trial court errors unless they are of constitutional dimension.").  Thus, it is not the province of this Court, sitting in habeas review, to determine whether, "in exercising discretion, it would have allowed this evidence if it were the trial judge, nor whether the trial judge abused his discretion as a matter of state law in excluding this evidence." Id.  Rather, "[t]he only question is whether the trial court's exclusion ruling was 'arbitrary or disproportionate to the

purposes' to be served by [excluding this evidence], so as to constitute constitutional error." Id. (quoting Agard v. Portuondo, 117 F.3d 696, 702 (2d Cir. 1997), *cert. denied*, 526 U.S. 1016 (1999)).

In the present case, Neal can not show that the state trial court's decision to restrict his cross-examination with respect to statements made to police regarding a missing neighborhood girl denied him a fundamentally fair trial. New York's appellate courts routinely uphold rulings by trial courts in which they exercise their discretion to exclude evidence of a victim's prior accusations where there has been a failure by the defendant to introduce proof establishing the falsity of the prior incidents. See, e.g., People v. Hamel, 174 A.D.2d 837, 837 (3d Dept. 1991) ("Inasmuch as defendant sought to impeach the complainant's credibility..., without an adequate factual basis for believing that the prior complaint was false..., we see no abuse of [trial court's] discretion in denying defendant's motion to permit cross-examination of the complainant about a prior incident of attempted rape"); People v. Lippert, 138 A.D.2d 770, 771 (3d Dept. 1988) (finding no abuse of discretion "where, as here, the party seeking to introduce... evidence has no basis for believing that the prior complaints were false"); see also, e.g., Little v. State, 413 N.E.2d 639, 643 (Ind. Ct. App. 1980) ("The focus is the falsity of the accusations. We believe that evidence of false accusations

of similar sexual misconduct is admissible on the issue of the victim's credibility. The allegations, however, must be demonstrably false."). Trial court discretion to exclude evidence of a victim's prior incidents where the falsity of the prior incidents is not proven is not 'arbitrary or disproportionate' to the purposes they are designed to serve, and thus Neal's constitutional due process rights have not been violated. Moreover, as trial court judges retain "wide latitude" insofar as the Confrontation Clause is concerned to impose "reasonable limits" on cross-examination "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant," Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986), the trial court's limitation on the scope of Neal's cross-examination likewise did not violate his constitutional rights. Therefore, Neal failed to show that the state court determination resulted in a decision that was: (1) contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Neal has not demonstrated an error of New York state evidentiary law, much less an error of federal constitutional magnitude. Accordingly, Neal's claim that

the trial court erred by limiting the scope of his cross-examination is dismissed.

### C. Ground Three: Ineffective Assistance of Appellate Counsel

Neal alleged in his petition for habeas relief and in his writ of error coran nobis that he was denied effective assistance of appellate counsel. Specifically, Neal alleged that appellate counsel was ineffective for failing to raise upon direct appeal claims that the trial court committed reversible error by denying trial counsel's motion for a mistrial when evidence of an uncharged crime was improperly admitted, and for failing to raise the claim that the trial court erred by failing to dismiss count six of the indictment.[2]

To establish that he was deprived of his Sixth Amendment right to effective assistance of counsel, a petitioner must show that: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The

---

[2] Count six of the indictment charged Neal with a Course of Sexual Conduct Against a Child in the Second Degree in violation of N.Y. Penal Law § 130.80(a).

standard is phrased in the conjunctive, so a habeas petitioner's failure to satisfy either prong requires that his ineffective assistance claim be rejected. Id. at 697. The burden on the petitioner is a heavy one because a reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690; accord, e.g., Pavel v. Hollins, 261 F.3d 210, 216 (2d Cir. 2001).

The standard of review for determining the effectiveness of appellate counsel is the same as the standard for trial counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert denied 508 U.S. 912 (1993)). Appellate counsel's performance may be found constitutionally inadequate if the petitioner demonstrates significant and obvious issues were ignored while weaker arguments were pursued, but appellate counsel's performance will not be found objectively unreasonable merely because every non-frivolous argument has not been advanced. Mayo, 13 F.3d at 533. The Second

Circuit has adopted the following method of treatment for claims of ineffective assistance of appellate counsel:

> When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Id. (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1985)).

Neal claims ineffective assistance of appellate counsel because counsel allegedly omitted significant issues when pursuing significantly weaker issues. Neal makes two assertions in support of his claim: that his appellate counsel failed to raise on direct appeal petitioner's claim that the trial court's denial of trial counsel's mistrial motion was improper; and that appellate counsel failed to raise on direct appeal petitioner's claim that count six of the indictment should have been dismissed. This court will examine both assertions under the Strickland standard to determine the merit of petitioner's claim of ineffective assistance of appellate counsel.

### 1. Trial Counsel's Mistrial Motion

Neal's trial counsel made a motion for a mistrial based on the testimony of Amanda Mosher, when she claimed Neal encouraged the children to have sexual intercourse with each other instead of simulated sex. T. 402, 479-80. Amanda Mosher, nine-years-old,

described the pictures in the pornographic magazine as showing people "having sex," and that as the pornographic video was playing, Neal asked her to "have sex" with his sons which she did, sometimes with clothes on and sometimes with clothes off.  T. 401-02.  Amanda Mosher testified that "sex" was when a "guy's private part went in the girl's private part," which she could name when asked only as a "cooch" or "crotch."  T. 402.  On defense trial counsel's cross-examination, Amanda Mosher testified that the children engaged in "humping, French kissing and sticking the boy's private into the girl's private" when asked what she meant by "having sex" and she accepted defense counsel's characterization of the latter as "real sex."  T. 437-38.

Neal was convicted of five counts of endangering the welfare of a child and a course of sexual conduct against a child for showing the children pornographic videotapes and magazine and encouraging them to engage in simulated sexual activity as charged in the indictment.  Neal's trial counsel sought a mistrial on the ground that the testimony would "lead the jury to believe" that "real life sex" occurred which was a "prior bad act" not charged in the indictment.  T. 480.  The trial court ruled that the testimony did not indicate "actual penetration" and offered to give a curative instruction that Neal was charged only with encouraging the children to "act out" sex, but denied the motion for mistrial.  T. 482.  Defense trial counsel refused the curative instruction as

"wholly insufficient under the circumstances" and "prejudicial."
T. 483. The application for mistrial was again renewed and again
denied after eight-year-old Amanda Thompson testified on defense's
cross-examination that when "Larry [Neal] made us do what was on
the tape" by "humping" each other, she considered it to be "real
sex." T. 520.

After examining the trial court record, this Court finds that
Neal's appellate counsel's decision not to pursue on appeal the
issue of trial court's denial of the mistrial motion does not
constitute ineffective assistance of counsel. A mistrial motion
will only be granted when there occurs an error or legal defect in
the proceedings at trial, or conduct inside or outside the
courtroom which is prejudicial to the defendant or denies him a
fair trial. See CPL § 280.10. There is no evidence in the record
of an error or legal defect at trial, nor conduct prejudicial to
Neal. No testimony was elicited that Neal expressly encouraged, or
was even aware of (if it indeed occurred) sexual penetration
between the three girls and Neal's pre-adolescent sons. Further,
assuming "real sex" did occur, it was not a "prior bad act"
prejudicial to the defense as trial counsel stated, but rather
relevant proof that the welfare of a child was endangered by Neal.
See, e.g., People v. Lemanski, 217 A.D.2d 962, 962 (4th Dept. 1995)
(evidence of "uncharged acts of misconduct... was properly admitted
in support of the child endangerment count"); People v. McIver, 245

A.D.2d 180, 180 (1st Dept. 1997) (uncharged "abuse of the complainant [was] relevant to the charged crime of endangering the welfare of a child during that period"), *lv. denied* 91 N.Y.2d 1010 (1998). Moreover, trial counsel failed to object to testimony implying sexual contact between the children was more than simulated, and during his cross-examination of prosecution witnesses, elicited additional testimony and details about what the children actually considered "real sex." The defense's witness, Kyle Sheehan, testified on direct that he "had sex" with Emily Halloran while both had their clothes on. T. 585, 588. The jury could have reasonably concluded that the pre-adolescent children were confused on the difference between the definitions of "real sex" and simulated sex, such that testimony about "real sex" did not concern prior uncharged bad acts prejudicial to Neal's defense.[3] Here, the record does not support the granting of a

---

[3] Kyle Sheehan testimony exemplifies the difficulty the children had distinguishing between actual sexual acts with penetration and simulated sex, as well as defense counsel's recognition of that difficulty.

Q (Defense Counsel): Now, Kyle, have you ever had either real or pretend sex with either Amanda Mosher or Emily Halloran?
A (Kyle Sheehan): Excuse me?
Q: *Let me make it simpler.* Have you ever had sex with either Amanda Mosher or Emily Halloran?
A: Once.
Q: And when we say "sex," what do we mean?
A: *I don't get it.*
Q: Okay. You said that you had sex once, with either Amanda or Emily, right?
A: Yeah.
Q: Okay. Which one?
A: Emily.
Q: Emily. And what did you do when you had sex with Emily?
A: *I forgot.*
...
Q: Tell us what you did?

mistrial.  The testimony reveals that issues of witness credibility were properly left for jury determination.  Therefore, under the <u>Strickland</u> standard, appellate counsel was not deficient as measured by an objective standard of reasonableness for failing to pursue trial counsel's unfounded motion for a mistrial on direct appeal.

## 2. Dismissal of count six of the indictment

Neal also contends his appellate counsel rendered ineffective assistance of counsel when he failed to raise on direct appeal trial counsel's claim that count six of his indictment should have been dismissed.  Count six of the indictment accused the petitioner of the crime of Course of Sexual Conduct Against a Child in the Second Degree in violation of N.Y. Penal Law § 130.80(a).  The prosecution's charge was that Neal, on or between September 1st, 1996 and September 1st, 1997, over a period of time not less than

---

A: *I don't know.*
Q: Okay.  Do you have a word for your private parts?  How do you describe your private parts?
A: What do you mean?  Describe it?
...
Q: When you say "sex," are you talking about your private parts, touching a girl's private parts, or something else?
A: Yes.  That's what I just said, yes.
...
Q: Do you know what humping is Kyle?
A: Kind of.
Q: What would you describe humping as?
A: Going up and down.
Q: Okay.  Going up and down, how, like with someone else or without someone else?
A: Someone else.
Q: Okay.  Is it something like what you saw in the movie when you were watching it?
A: Yes.
T. 584-88 (Emphasis added).

three months in duration, did engage in two or more acts of sexual conduct with Amanda Mosher who was less than eleven years of age.

Prior to trial, defense counsel requested information regarding when, where, and how many occurrences or acts of sexual conduct were alleged by the prosecution in count six. Transcript of May 14, 1998 proceedings, at 2-4. The prosecution offered case law supporting his position that the people were not required to enumerate how many acts of sexual conduct occurred with the crime a course of sexual conduct. Id. at 4-5. The trial court reserved its decision. Id. at 5. The defense counsel challenged count six of the indictment again at trial, claiming the proof presented at trial was insufficient to support a prima facie case establishing the required temporal element. T. 559-60. The prosecution pointed out, in reply, that Amanda Mosher's trial testimony discussed acts of sexual conduct which occurred in December of 1996, August of 1997, and acts in between. T. 560. The court decided that whether the prosecution had proven criminal acts occurred within the specified time frame was a "question for the jury" to determine.

After reviewing the trial record, this Court finds Neal's trial counsel's contention that count six was inadequately pleaded to likewise be without merit. The People provided ample specificity in Amanda Mosher's trial and grand jury testimony in particularizing that Neal was accused of touching Amanda Mosher's vaginal area and had her touch his penis at least two or three

times during the one-year period alleged in the indictment.  <u>See</u> T. 15-16, 407.  The prosecution is not required to particularize or enumerate each individual act of sexual abuse when alleging a Course of Sexual Conduct against a young victim.  <u>See</u> <u>People v. Colf</u>, 286 A.D.2d 888, 888-89 (4th Dept. 2001) ("The text and legislative history of [N.Y.] Penal Law § 130.80 (former [a]) make clear that it is a continuing crime to which the usual requirements of specificity with respect to time do not pertain"), *lv. denied* 97 N.Y. 2d 655 (2001).  Therefore, Neal's appellate counsel did not act deficiently by failing to pursue the issue of trial court's failure to dismiss count six of the indictment on direct appeal as Neal would not have prevailed if counsel raised the issue.

Neal's allegations do not rise to the level sufficient to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" <u>Strickland</u>, 466 U.S. at 489.  This Court finds Neal did not suffer from ineffective assistance of appellate counsel and accordingly his claim is dismissed.

## CONCLUSION

For the reasons stated above, Larry Neal's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the petition is dismissed.  Further, because Neal has failed to make a substantial showing of a denial of a

constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           July 21, 2009